05-51-25 Mr. Crank Good afternoon, Your Honor. Michael Crank for the plaintiff appellate in this case. There's three issues on appeal here. Two are substantive, one is procedural. I would like to start with the first substantive argument. The appellant contends that the Court of Federal Claims erred in their opinion dismissing Appellant JENTOFT's Equal Pay Act claims pursuant to Federal Claims Rule 12-B-6 and also Rule 56. On that claim, do I understand correctly that the retention bonus here is available only to civilian employees, that it's a program for payment of bonuses to civilian employees? Yes, Your Honor. So that would be under, what specifically set out as an incentive to recruit here helicopter pilots out from the private sector into this National Guard dual-status technician position? Well, then maybe I'm mistaken. The program I'm thinking about applies to civilian employees generally in the Federal bonus here was a bonus that the Georgia National Guard had the authority to give these retention bonuses to employees. Let me ask you this way. What is the statutory provision that provides for these bonuses? Your Honor, I don't have that handy for you. I don't believe that the retention bonus was contested by the government in this case. The issue was No, but it may make a difference as to what the conditions for the payment of the retention bonus, whether it's to be paid because of military status or because of civilian status. It was a civilian status bonus. It was not related to military pay. Ms. JENTOFT was a GS-12, I believe in this case, and the bonus that was given to her was indeed told to her it was civilian part of her dual-status job. She was a civilian during the week in this technician position, and the military status was simply the one weekend per month, two weeks per year under the Georgia Air National Guard. Okay, but the problem here is that the bonus decision, if I understand correctly, was made by her military superior. So in challenging the failure to pay her a bonus, she's challenging the decision of a military superior, correct? She is, Your Honor, but the other, the military superiors over her were indeed employees of the Georgia National Guard. I believe the top decision maker was only, however, a state employee and the Georgia Department of Defense who ultimately made the decision. So we contend that... Who was that who made the ultimate decision? I believe that was Poythress, General Poythress in the case, but he was a state employee. But he's also her military superior, right? Up the chain of command, I believe it would eventually end with General Poythress, but due to the nature of this job, she worked for the Georgia Department of Defense, but yet was paid by the federal government under a GS-12 status. And the position was specifically created under the National Guard Technicians Act that allowed the National Guard for the first time in 1968 to employ these dual status employees because during the week, they are hired as civilians and they are paid overtime. I understand that, but if she were to pursue this claim on the merits, the general and the colonel who supervised her would have to be called as witnesses, right? I believe they would, Your Honor. Right, so there's this claim that that would interfere with military discipline if she were contesting the decisions of her military superiors. What's the answer to that? Well, Your Honor, if we go down that road, then every dual status civilian technician is never going to have a right under the Equal Pay Act or Title VII or any laws that apply to civilian federal employees because every dual status technician hired by the National Guard across the country eventually will have a military personnel. So haven't several of the circuits held that, that these are military people? In some factual analysis, courts go through and look at the nature of the employment decision of which the employee is complaining. If it relates to the military status of their job— So whether you get a bonus depends upon how you perform. That's military, isn't it? How she performs in the civilian part of the technician job, which was during the week. It was not during the weekend service or her military service. Mr. Crane, did she get two separate paychecks? One during the week and one during the weekend? She got her civilian paycheck from the federal government under GS-12, and then she got the regular pay that every member of the National Guard gets. If that comes once per month or however often it comes, she was not paid by one source, Your Honor. She was paid by two separate sources? Well, the money all came from the federal government, but she was paid for her civilian job and a regular, I believe, bi-weekly paycheck, and then she was paid for her National Guard service, just as every other member of the National Guard is paid. So in your argument, how do we differentiate between the civilian and the military chain of command at that point? Well, I think we get back to how the National Guard Technicians Act in 1968 defined this position, and specifically Congress went in to define it as a federal civilian employee being hired by the National Guard. Congress intentionally put in the words civilian because it, for the first time, allowed the National Guard to offer these employment positions to individuals beyond— Where did Congress speak? Pardon me, Your Honor? Where did Congress speak, as you indicated? Your Honor, in the National Guard Technicians Act, which is 32 U.S.C. 709, and it references 10 U.S.C., 10— 10216? 216A, and specifically in the definition of this dual-status technician, calls it a—the a civilian position as a technician. Was Ms. Gentoff assigned to a civilian position? Yes, Your Honor. She was a civilian maintenance test pilot. But then why have the other circuits gone the other way? Do you agree that the other circuits are against your position? I believe some of the circuits have been attacking this doctrine getting into the issue of whether— I'm sorry. Some of the circuits decide one way of looking at this Ferris doctrine is a per se decision, and some circuits, which we believe are the majority, look—or do not decide it on a per se basis. They look at the underlying employment position. Is it in the realm of the civilian employment, or is it in the realm of the military part of this position? We contend the court erred by jumping immediately to the Ferris doctrine. As discussed— What language are you relying on? But the military—the Ferris doctrine has to apply only to the military, right? Yes, Your Honor. So the court below, then, you're saying made a decision directly making it into a military position. The court below made a decision in using the Ferris analysis to, in essence, hold per se that all dual-status civilian technician jobs are inextricably intertwined with the military status, and therefore, under the Ferris doctrine, when courts do not have the power to get into the military decision-making and chain of command, the court did not have jurisdiction to hear this. Our argument is the court jumps to the Ferris doctrine before looking at the clear intent of the statute. But the statute, the language you're relying on, does that come from the 1996 Amendment? No, Your Honor. The language in the National Guard Technicians Act comes from the 19— No, those are in the Title X. The language in Title X that talks about them, they should be treated as civilian employees for purposes of other statutes. That comes from a 1996 Amendment, doesn't it? I believe, Your Honor, it does. But in looking at the Ferris— What's the legislative history of that? What's the purpose of that addition to the statute in 1996? I believe the purpose is, again, distinguishing the civilian nature of the position versus the military nature of the position. What's the history of that amendment? I do not have that, Your Honor. Our contention is the original cases in discussing the Ferris doctrine, the Ferris v. United States, and all the cases after that, originally were talking about tort cases. Subsequently, after Title VII was enacted, because of the definition of Title VII, employee states that all federal employees are subject to it. Courts then applied the Ferris doctrine and said, because of this broad definition of employee, we do not believe we have the jurisdictional authority to govern over that. However, in the Chappelle decision, Chappelle v. U.S., and also the Stalber decision, Stalber v. Klein, the courts set out that the Ferris doctrine is a judicially created doctrine. And it is true in absence of congressional intent to the contrary. And when one looks at the specific definition of dual status employee in the Technicians Act, which specifically calls dual status technicians civilian federal employees, and also the Fair Labor Standards Act, which was subsequently amended in 1974, specifically stated that the Fair Labor Standards Act and the Equal Pay Act, which is a subsection to the FLSA, specifically applies to civilian employees of the military. You're in the rebuttal, which you can use here or save as you like. I'm your honor. The last part I would add before I'm saving some time for rebuttal is that the Ferris doctrine is to be used absent congressional intent to the contrary. And here, when one looks at the clear statutory language of the Technicians Act and the Equal Pay Act under the Fair Labor Standards Act, it specifically applies to federal civilian employees. Mr. DeNarcissis, could you first tell us why 10 U.S.C. 10216 doesn't mean that Ms. Gentok is a civilian employee? Certainly, your honor. May it please the court. The Technician Act addresses the status of National Guard dual status technicians and makes clear that they are not standard federal government civilian employees. For example, they are required to wear a military uniform while performing their dual status technician duties. You're talking about standard employees in uniforms, but this isn't a model of the draftsmanship, but it says for purposes of this section and any other provision of law, military technician dual status is a federal civilian employee who, A, B, and C, is assigned to a civilian position serving as a technician. Isn't that Ms. Gentok? No, your honor. If you look at all the provisions of the Technician Act, it's clear that dual status technicians differ very greatly from standard federal government employees, standard federal civilian employees. Well, that's why there's a definition. Right. But every court that has looked at this issue, looking at the statutory language and looking at the legislative history— Not a single one of the cases I've looked at discusses this language. Isn't that correct? In fact, almost all of them were before the 1996 amendment. That may be correct, your honor, but that does not change the fact that the provisions in the Technician Act that were enacted in 1968 are still the law and still demonstrate that dual status technicians are— Yeah, but you've got a problem with this language, and the other courts haven't considered this language that Judge Lurie was calling your attention to. But that doesn't change the fact, your honor, that the language in the Technician Act is still in place. If Congress had— Well, in terms of whether we should follow the other authority, the other authority doesn't consider this issue. Well, I believe there's language in the Technician Act, as originally enacted,  and indeed, they have a dual hybrid status. They're both military and civilian, and they're both federal and state. But it was clear that Congress's intent, when it enacted the Technician Act, was to make dual status technicians federal government employees for only two limited— Well, what was the purpose the Congress wanted to adopt the 1996 amendment? That's the question. What were they trying to do? That I don't know, your honor, but I think it's important that they didn't change the Technician Act, which lays out how dual status technicians differ from civilian employees. They're required to be members of the National Guard. They are required to wear their uniform while performing their dual status technician duties. They are not subject to a number of provisions in Title V of the United States Code that apply to federal civilian employees. Their duty hours are set by their military service secretaries. They have no right to You're giving a very good argument as if this statutory provision didn't exist. I don't think that's a fair characterization, your honor. If Congress— I don't mean to be unfair. If Congress had deleted the text in the Technician Act that lays out all the provisions that I have just enumerated to the court, then I would agree that clearly Congress was changing its approach to dual status technicians, moving from that hybrid but primarily military— But that's not what they added in Section 1020-216, right? Excuse me, your honor? The amendment was in 1996, as Judge Dyck was pointing out. That was added language. I'm actually not positive about that, your honor, but assuming that that is correct, Congress in 1996 did not delete the language in the Technician Act that lays out all the ways that a dual status technician is primarily military in nature. But they added to it. They added the language federal civilian employee. As I said, your honor, I'm not in a position to contradict or confirm that. Well, suppose the statute had said, for purposes of the Equal Pay Act, a dual status technician shall be considered to be a civilian employee. You'd lose, right, if they said that in the statute? I think that is correct, your honor. And the question is whether this language is the equivalent of that. Well, I think just standing as it is, it clearly can't be. Why not? Well— It says, for purposes of this section and any other provision of law, a military technician dual status is a federal civilian employee. Well, as I said, there were indications in the Technician Act as originally adopted that dual status technicians are, to a degree, federal civilian employees. And all the courts that have looked at that language have concluded that Congress was intending to make them civilian employees for certain limited purposes, but not civilian employees for all purposes. So you're saying then it's a civilian position, but a military occupier? No, I think it's more accurate to say it is a position that has both a military and a civilian aspect, with the military aspect dominating. I think every court that has looked at that, including this court and its predecessor, the Court of Claims, has interpreted the dual status technician to be that type of unusual hybrid position. Is the retention bonus here a civilian bonus under the statute? That I'm not sure about. But as you pointed out, it was something which was decided upon by military superiors to Ms. Gentile. Claims Court didn't especially deal with 10216, did it? I think that is correct, Your Honor. But I think we should look to the Technician Act.  Did it not come up in the argument? Well, it is mentioned once as perhaps an argument by Plaintiff, but isn't really dealt with in terms of explanation. I think it's fair to say that Plaintiff was not really pursuing that argument before the Court of Federal Claims. What attributes then would you state or delineate to make it into a civilian position? How would it be a civilian position? I mean, how could it be changed to make it a civilian position? Well, if the occupant was not required to wear a military uniform, to be a member of the National Guard, to have the rank that is necessary for the position of the National Guard. If the—another important position in the Technician Act, which I didn't mention before, is the fact that the employment of dual status technicians is primarily administered by their state adjutant general, not by civilian managers. So if that provision was changed, basically if you repealed all the provisions in the Technician Act that talk about the military aspect of the position, then I guess we would then have a straight civilian position. What you're saying is this statutory provision should basically be ignored because everything else you can say about the issue is on the other side, except theory. Well, I think that's probably part of the answer, Your Honor. I don't think there's any affirmative indication that when Congress adopted 10 U.S.C. 216 that it intended to change the existing special character of National Guard dual status technicians. Well, how do we know? You haven't looked at the background of the statute. Well, that is correct, but in the absence of something clear in the legislative history saying that, that would be my position. With regard to the retaliation claim, the Court of Federal Claims clearly reached the correct decision. That claim clearly sounds in tort and the court properly dismissed it for lack of subject matter jurisdiction. I don't have anything else to add unless the panel has further questions for me. What's the basis for it sounding in tort? The basis for the Court of Claims analysis? Well, it's based on the employer taking action against the employee when the employee has complained about something that is, I guess, basically inherently tortious in nature. Because it's precedent, too. Yes. The Court of Claims precedent. That is correct. Ms. Gentoff argued that there was not a sufficient explanation in Clause v. United States, but in any event, that decision is binding precedent for this panel. If there's nothing further, then no one gets penalized for giving up time. Mr. Crane has a little rebuttal time. When Congress amended the Fair Labor Standards Act in 1974 to include federal civilian employees in the legislative history of that, they specifically used the word and any other civilian employees working for the armed services. This was a short time after Congress enacted the National Guard Technicians Act, where again, they specifically call the dual status technicians federal civilian employees. With regard to the retaliation case, the Court of Claims relies on two decisions. The Hendricks and also the Clause. Neither of those two cases explain why a statutory cause of action is, quote, sounding in tort. Still a holdup, isn't it? I believe it is, Your Honor. And this court can take the opportunity to clarify that indeed a statutory cause of action under the Fair Labor Standards Act. You're arguing your case. Don't you need to respond to Mr. Denakis at all on the 10 to 16 point? Well, I believe we did raise the argument that under the equal pay dismissal, the plaintiff in the case did have the right to proceed because she was a civilian employee. We argued the Ferris Doctrine and why it did not apply. And in light of the express statutory language, calling her a civilian employee of the federal government. So you relied on 10 to 16 in the Court of Federal Claims? Well, I could not point you where we cited that statute, but we were aware of the statute calling her a federal civilian employee, not a military employee, just because of the nature of this case. I think it's important for the Court. How about the fact that she has to wear a uniform, right? Military uniform? She does. Not at all times, but on certain occasions she has to. And also not at all times. Had we had the opportunity for discovery as we had requested, we would have shown that indeed not at all times she was called by her military rank and not at all times required. She would have been discovered out of uniform. Yes, Your Honor. And also it's important. What attributes, though, Mr. Crane, reaches a point that makes it into a civilian position, except for the language federal civilian employee of 10 to 16? Your Honor, she is paid hourly. She is not entitled to the military benefits that individuals up her chain of command are entitled to. She is under military control, isn't she? Eventually, but all civil service employees of the military eventually up the chain are controlled by military. That does not make them military employees. The checkout personnel at a PX are clearly not military employees. But up the chain of command, if you go high enough, indeed they're covered by military supervisors. On the last point, Your Honor, is if the court believes that the retaliation claim was properly dismissed, we would ask that it be transferred to the district court under this court's power to do so. That issue was not addressed and not raised at the lower court because it came on the court's decision on its own. Thank you, Mr. Crane. The case will be taken under advisement. Thank you. Thank you.